UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TYSHAWN B., ) <br> ) <br>     **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> KILOLO KIJAKAZI, ) <br> **Acting Commissioner of the** ) <br> **Social Security Administration,** ) <br> ) <br>     **Defendant.** ) | Case No. 21-CV-509-CDL |

**OPINION AND ORDER**

Plaintiff seeks judicial review under 42 U.S.C. § 405(g) of a decision of the Commissioner of the Social Security Administration (Commissioner) denying disability benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c)(1), (2). For the reasons set forth below, the Court **reverses** the Commissioner's decision and **remands** the case for further proceedings.

**I.     Standard of Review**

The Social Security Act (Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See id*. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citing *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, --- U.S. ---, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). The court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## II.  Procedural History

The plaintiff filed an application for Title II social security disability benefits on May 3, 2019. (R. 52). The plaintiff alleged that he became disabled due to sporadic seizures, delirium, and hypertension. (*See* R. 127-128). He was 38 years old on the alleged onset date of July 15, 2018. (R. 127). Before his alleged disability, the plaintiff worked as a welder and torch cutter. (R. 64). He has an eleventh-grade education. (R. 131).

The Commissioner denied the plaintiff's application on initial review and on reconsideration. The plaintiff then requested a hearing before an Administrative Law Judge

(ALJ). An ALJ held a hearing by telephone on November 24, 2020 (R. 52). Testimony was given by plaintiff and a vocational expert (VE). *Id*. On February 3, 2021, the ALJ issued a decision denying disability benefits. (R. 52-71). On October 7, 2021, the Appeals Council denied plaintiff's request for review, which rendered the ALJ's decision the agency's final decision. (R. 1-6). Following the Appeals Council's denial, plaintiff timely filed a Complaint in this Court. (*See* Doc. 2). Accordingly, the Court has jurisdiction to review the ALJ's February 3, 2021 decision under 42 U.S.C. § 405(g).

### III. The ALJ's Decision

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. At step two, the ALJ determines whether the claimant has an impairment or a combination of impairments that is severe. At step three, the ALJ determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpt. P, App'x 1 (Listings). At step four, the claimant must show that his impairment or combination of impairments prevents him from performing his previous work.

The claimant bears the burden on steps one through four. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five

3

that the claimant retains the capacity to perform other work available in the national economy, in light of the claimant's age, education, and work experience. *Id.*

Here, the ALJ determined at step one that plaintiff meets the insured status requirements of the Act through December 31, 2023, and that he had not engaged in substantial gainful activity since his amended alleged onset date of July 15, 2018. (R. 54-55). At step two, the ALJ found that the plaintiff has severe impairments of seizure disorder and alcohol use disorder. (R. 55). The ALJ found that plaintiff's hypertension and adjustment disorder are non-severe. *Id.*

The ALJ also explained her finding that the plaintiff does not have any severe medically-determinable mental impairment. First, the ALJ discussed the findings of consultative examiner Peter Ciali, Ph.D., who examined the plaintiff on December 7, 2019. *Id*. Dr. Ciali assessed adjustment disorder with anxiety and depressed mood, and alcohol use disorder. (R. 55-56). However, he reported that the plaintiff has intact problem-solving ability, task persistence, and ability to retain instructions. (R. 56). His ability to interact with others was found to be intact. *Id*. Further, the plaintiff lives alone and is able to perform "all normal daily activities." *Id.*[1]

At step three, the ALJ found plaintiff's impairments do not meet or medically equal a Listing. Specifically, the ALJ explained that the plaintiff's seizures do not meet the criteria of Listing 11.02 because the Listing requires that certain symptoms have occurred in spite of at least three months of prescribed treatment (along with other requirements),

---

[1] Dr. Ciali's examination notes are discussed further *infra*.

whereas the record here indicates that the plaintiff has been noncompliant with his seizure medications. (R. 57).

With regard to mental impairments, the ALJ found the plaintiff has a mild limitation in each of the each of the paragraph B domains—understanding, remembering, and applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 56); *see* 20 C.F.R. § 404 Subpt. P App'x 1.[2] Because plaintiff does not have at least one extreme or two or more marked limitations, the ALJ determined that the paragraph B criteria are not satisfied. *Id*. While the plaintiff's representative alleged that he meets Listing 12.06 for anxiety and obsessive-compulsive disorder, the ALJ found that the plaintiff has not received any mental health treatment or been prescribed any medications for a mental impairment, and noted Dr. Ciali's observation that the plaintiff is able to socially interact with others. (R. 56-57).

At step four, the ALJ determined that Plaintiff has the residual functional capacity (RFC) to perform

> a full range of work at all exertional levels but with the following nonexertional limitations: No climbing ropes, ladders, or scaffolds. No work involving any exposure to unprotected heights, dangerous moving machinery, open flames, open bodies of water, or sharp objects such as knives or blades. No commercial driving. No exposure to extreme hot temperatures (over 90 degrees) or excessive humidity (over 80%).

---

[2] When there is evidence of a mental impairment that allegedly prevents a claimant from working, the ALJ must follow the procedure for evaluating mental impairments set forth in the regulations and is required to document the application of the procedure, known as the psychiatric review technique (PRT), in the decision. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The "paragraph B" criteria represent the areas of mental functioning a person uses in a work setting. *See* 20 C.F.R., Part 404, Subpart P, Appendix 1, §12.00 (C).

*Id*. In making this finding, the ALJ addressed plaintiff's hearing testimony as well as medical opinions, objective medical evidence, and prior administrative medical findings in the record. (*See* R. 57-64).

Citing the VE's testimony as to a hypothetical person with plaintiff's RFC, the ALJ found that plaintiff is unable to perform his past relevant work. (R. 64). Accordingly, the ALJ proceeded to step five. Based on the VE's testimony as to a hypothetical person with the plaintiff's age, education, work experience, and RFC, the ALJ found that plaintiff can perform the requirements of representative occupations, including:

> *Janitor*, light exertion, unskilled, specific vocational preparation (SVP) level 2, Dictionary of Occupational Titles (DOT) # 323.687-014, with 133,393 jobs existing in the national economy;
>
> *Table attendant or bus boy*, medium exertion, unskilled, SVP level 2, DOT # 311.687-018, with 59,482 jobs existing in the national economy;[3] and
>
> *Price marker*, light exertion, unskilled, SVP level 2, DOT # 209.587-034, with 311,150 jobs existing in the national economy.

(R. 65). Accordingly, the ALJ concluded at step five that Plaintiff is not disabled. *Id.*

## IV.   Discussion

The plaintiff argues that the ALJ erred by disregarding evidence of the severity of his seizure disorder and functional limitations caused by his seizures. The ALJ's decision summarized the plaintiff's testimony as follows:

---

[3]   The ALJ's decision found that the correct number for the table attendant/bus boy job is 311.677-010, but found that the VE's description of this job was otherwise accurate and that the misstated number was a de minimis error that "does not change the outcome of the case." (R. 65 n.1). The plaintiff's brief raised no objection to this finding.

> He is 5'11" tall, and currently weighs 180 pounds. His normal weight is between 150 and 180 pounds. He is single and lives alone in an apartment. He has a 6-year-old daughter and has full custody, but she lives with her grandmother. He gets places by city bus or someone will pick him up. He has no problems knowing what bus to take. He will ask questions if he does not know where he is going.
>
> [The plaintiff] has an 11th grade education and was in regular classes, but did not get a GED. He returned to school and received a welding certificate. He is able to read, write and do simple math such as addition and subtraction but sometimes spaces out and cannot do these, but for the most part, he can do these.
>
> He receives food stamps and his mother pays the living expenses. He has no healthcare. His last seizure was two nights ago, and he had been taking his medications. With this seizure, he bit his tongue and his eyes were wild. His last grand mal seizure was "maybe August."
>
> He does not do drugs, but drinks one or two beers about 2-3 times per week, but denied heavy alcohol use. He testified that he just sits around and starts spacing out. He has a very intense sense of smell. He tries to keep doing something and staying busy like housework to keep from spacing out. He can focus on 30-minute show and explain it. He loves watching The Doctors that comes on at 9 o'clock.

(R. 58).

However, the ALJ found the plaintiff's alleged limitations were not fully supported by the record, explaining that

> At one point or another in the record, either in forms completed in connection with the application and appeal, medical records or reports, or in the [plaintiff's] testimony, the [plaintiff] has reported he tries to keep doing something and staying busy like doing housework to keep him from spacing out. He watches television. He reported drinking one or two beers 2-3 times a week and denied drinking harder alcohol (testimony).

*Id*. As the ALJ noted, the plaintiff admitted that he lives alone and is able to perform normal daily activities. (R. 56). Additionally, the ALJ noted that plaintiff continued to deny heavy

7

alcohol use when questioned under oath, despite his treatment records from the prior month, where he admitted to drinking excessively and daily. *Id*.

The ALJ also found the objective medical evidence did not fully support the extent of limitations alleged. (R. 59). The medical evidence discussed in the ALJ's decision is summarized in part below:

- On March 20, 2018, the plaintiff was hospitalized for seizures. While in the hospital, he had a grand mal seizure episode, which was resolved with Ativan/Keppra. (R. 59). He was postictal (temporarily impaired) and difficult to wake afterward. *Id*. He admitted to some recent alcohol use. *Id*. On examination, he was alert but somnolent, oriented times three, and cooperative. *Id*. He was tachycardic with a pulse of 121 beats per minute and blood pressure of 122/80. *Id*. He was discharged on March 22 with instructions to continue taking Keppra and to avoid alcohol use and other activities that might lower seizure threshold. *Id*.

- On June 22, 2018, the plaintiff had a follow-up exam three weeks after another seizure, when he reportedly blacked out while driving. He had not had any other seizures since leaving the hospital. He was assessed with epilepsy and recurrent seizures, and was continued on Keppra and given Buspirone for anxiety episodes, and instructed to consult with a neurology specialist.

- On August 22, 2018, the plaintiff presented to the emergency department for complaint of seizure. He reported that he had Keppra at home but had been forgetting to take it. *Id*. He was instructed to take his medications and follow up with his primary care physician. *Id*. The plaintiff "appeared to be reasonable and

agreed to comply with these instructions." (R. 60).

- On March 13, 2019, the plaintiff was hospitalized with likely alcohol withdrawal symptoms. *Id*. He had not been taking Keppra because he read on the internet that it might cause seizures. *Id*. He was given Ativan and was monitored for "likely withdrawal seizures." *Id*. On examination, he was awake, alert, and pleasant, oriented times four, with intact recent and remote memories and normal attention span and concentration. *Id*. After neurological examination, he was assessed with seizures and breakthrough seizures and was discharged in stable condition on March 16, with prescriptions for amlodipine and Keppra. *Id*.

- On June 17, 2019, he presented to the emergency department after falling and losing consciousness for 1-2 minutes. *Id*. He was confused and unable to speak. *Id*. He had lost his prescription for Keppra and had not been taking it. (R. 61). He was discharged in stable condition with a new prescription for Keppra. *Id*.

- The plaintiff was seen by Gloria Perez, D.O. for a consultative physical examination on October 12, 2019. *Id*. The chief complaint was seizures for four years. The plaintiff reported having seizures 3-4 times per month that were usually grand mal where he "wakes up in the hospital." *Id*. He reported more absence seizures that could occur multiple times a day. He reported taking Keppra but his seizures were still not controlled. *Id*. He said that he usually obtained Keppra during hospital visits, as he did not have a primary care provider. On examination, the plaintiff had a normal gait, and physical examination findings were largely normal regarding his lungs, heart, and cardiovascular system. *Id*. He was alert and oriented times three,

with mood, judgment, and affect within normal limits. *Id*. The assessment included seizure disorder etiology unknown, hypertension, and tobacco abuse. *Id*. As the ALJ noted, Dr. Perez did not provide an opinion regarding the plaintiff's RFC. (R. 64).

- State agency medical consultants Colleen Ryan, M.D. and Scott Newton, M.D. reviewed the medical evidence in the record and opined that the plaintiff has an RFC for work at all levels of exertion, but that he should not climb or use dangerous machinery, as a seizure precaution. *Id*. The ALJ found these opinions are consistent with the medical evidence of record. (R. 64). However, the ALJ determined that the record as a whole warranted additional environmental hazard restrictions, as set forth in the RFC determination. *Id*.

The plaintiff does not dispute the ALJ's summary of the medical and opinion evidence. However, he argues that the ALJ improperly ignored several third-party function statements and seizure questionnaires completed by the plaintiff's mother and girlfriend. In August 2019, the plaintiff's mother reported that she had observed roughly eight or nine seizures recently. (R. 325). She later also witnessed seizures in March and April 2020. (R. 307). The plaintiff's mother stated that the plaintiff describes sensing a "fruity smell" and "seeing stars" just prior to experiencing a seizure. (R. 307, 325). During a seizure, he has a blank stare and is unable to respond to verbal commands. (R. 307, 325). The plaintiff's mother reported that he has been injured many times from falling due to seizures. (R. 279, 285, 325). Following a seizure, the plaintiff is slow in his responses for roughly twenty to thirty minutes. (R. 307-308, 325). He has soiled himself during seizures. (R. 307). The plaintiff's mother stated that his seizure medication causes weakness, decreased energy,

dizziness, and irritability, and that he sometimes forgets to take it. (R. 280, 285). He can only pay attention for a few minutes at a time, and has difficulty finishing tasks. (R. 283). He has problems with authority, handling stress, and with changes in routine. (R. 284). Plaintiff's mother believes that he needs someone to accompany him because of the sudden onset of his seizures. (R. 282).

The plaintiff's girlfriend witnessed "7 or 8" seizures. (R. 358). She described the plaintiff as appearing "spaced out" just before a seizure, sucking his bottom lip and yelling out. (R. 358-359.) His seizures cause him to fall unless he is sitting, which has caused injuries. (R. 358-359). The seizures last three to five minutes, followed by a period where he is nonresponsive for 20 to 30 minutes. (R. 358). She reported that the plaintiff has been injured when he hit his head on a table and the floor. *Id*.

The plaintiff argues that the subjective statements made by the plaintiff and these third-party witnesses warranted greater physical and mental limitations in the RFC. For example, he contends that the ALJ ignored evidence that he experiences weakness, fatigue, and dizziness as a result of his medications. The plaintiff contends that the RFC should be limited to sedentary work due to his risk of falling during a seizure episode. Alternatively, he argues that the RFC should include a sit-stand option so that he can sit when he notices signs of an impending seizure. The plaintiff further asserts that the need to take breaks during his seizures and recovery would be work-preclusive. Finally, he contends that his mother's testimony "established additional mental deficits in that he has issues with responding appropriately to authority, and managing handling stress and changes in routines." (Doc. 15 at 8).

11

Here, the ALJ's decision did not discuss or even acknowledge the third-party reports by the plaintiff's mother and girlfriend. In determining a claimant's RFC, "[t]he record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting [the] decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)); *see also Bigpond v. Astrue*, 280 F. App'x 716, 718, 2008 WL 2222016 (10th Cir. 2008).

The Commissioner argues that the ALJ's omission was not grounds for remand, noting that no medical opinion in the record indicated that the plaintiff would require additional RFC limitations. The Commissioner also contends that the third-party statements were largely cumulative of the claimant's own statements that were addressed in the ALJ's decision.

The Court disagrees. Both witnesses had first-hand knowledge of the plaintiff's seizures and described the plaintiff's behaviors before, during, and after seizures in largely consistent terms. The third-party reports and seizure questionnaires completed by the plaintiff's mother and girlfriend provided unique, uncontroverted evidence that is not cumulative of other evidence discussed in the ALJ's decision. In failing to address these first-hand observations, the ALJ committed reversible error by ignoring "uncontroverted evidence [the ALJ chose] not to rely upon, as well as significantly probative evidence [the ALJ] reject[ed]." *Mays*, 739 F.3d at 576.

Moreover, the Court cannot determine whether this evidence was properly considered. "The ALJ's decision should have been evaluated based solely on the reasons stated in the decision." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004); *see also Knipe v. Heckler*, 755 F.3d 141, 149 n.16 (10th Cir. 1985) (holding that an ALJ's decision cannot be affirmed on the basis of appellate counsel's post hoc rationalizations for agency action). District courts "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2004).

Here, although the ALJ's decision addressed some medical evidence documenting instances when the plaintiff had lost consciousness and had fallen, (R. 58-62), the decision did not address how the ALJ assessed evidence of the plaintiff's risk of injury from falling during a seizure, or evidence relating to the time period when the plaintiff is recovering from a seizure. These and other symptoms documented in the third-party reports reasonably could affect the plaintiff's ability to perform full-time work within the RFC determination. Moreover, the accounts of third-party witnesses are uniquely probative here, because according to the record evidence, the plaintiff is not necessarily aware of or able to recall what happens during a seizure. (*See, e.g.*, R. 59-60). Accordingly, the case must be remanded for further consideration of the third-party statements in light of the record as a whole.

The Court also notes that under Social Security Ruling (SSR) 16-3p, the ALJ may consider a claimant's failure to follow prescribed treatment, among other factors, in evaluating the consistency of a claimant's subjective complaints. However, the ruling

provides that the Commissioner "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16-3p. The ALJ must also "explain how [he or she] considered the individual's reasons in the evaluation of the individual's symptoms." *Id*. Here, the ALJ's decision cited the plaintiff's noncompliance with his medications but failed to explain how the ALJ considered the plaintiff's reasons for noncompliance. On remand, the ALJ should also address this deficiency.

V.  **Conclusion**

For the reasons set forth above, the Court finds the ALJ's RFC determination is legally erroneous and is not supported by substantial evidence. Therefore, the decision of the Commissioner finding Plaintiff not disabled for the relevant period is **reversed and remanded** for further proceedings consistent with this opinion.

**SO ORDERED** this 30th day of March, 2023.

*Christine D. Little*
Christine D. Little
United States Magistrate Judge